UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOMAS T. ANDRES,

       Petitioner,                              Hon. Robert Holmes Bell

v.                                                    Case No. 1:06-CV-849

KENNETH McKEE,

       Respondent.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Andres' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Andres' petition be **denied**.


## BACKGROUND

As a result of events which occurred in the summer of 2003, Petitioner was charged with one count of third degree criminal sexual conduct and one count of fourth degree criminal sexual conduct. Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

1

**Neva Phillips**

Phillips was 16 years of age as of the date she testified. (Trial Transcript, March 14, 2005, 24). She had lived with her father and step-mother since she was eight years old. (Tr. 26-27). Petitioner was married to Phillips' mother. (Tr. 26). For a period of time, Phillips did not regularly visit her mother, but when she was 15 years of age Phillips began to regularly visit her mother and Petitioner "every other weekend or every weekend." (Tr. 26-28).

Phillips related an incident that occurred during the summer of 2003, when she was 15 years of age. (Tr. 28-29, 51). Phillips was visiting her mother and Petitioner at their residence. (Tr. 29). On the night in question, Phillips was sleeping on the couch when Petitioner entered the residence. (Tr. 29-31). Phillips' mother was working at the time. (Tr. 30-31). Petitioner was "stumbling" and appeared to be intoxicated. (Tr. 30-31). Petitioner sat on the couch, waking Phillips. (Tr. 31). Petitioner then began to rub Phillips' chest and legs. (Tr. 31-33). Phillips told Petitioner to stop, but Petitioner ignored her request and began to digitally penetrate Phillips' vagina. (Tr. 33-34). Petitioner then removed Phillips' pants and began having sexual intercourse with her. (Tr. 34-37). Phillips told Petitioner to stop, to which Petitioner responded, "be quiet." (Tr. 37).

Phillips did not immediately report this incident. (Tr. 38-39). On December 11, 2003, Phillips told her father what happened, at which point he took Phillips to a hospital where she reported that Petitioner had sexually assaulted her. (Tr. 39-40, 47-61, 70).

On cross-examination, when confronted with assertions that she had related different facts about the incident to other individuals, Phillips maintained that her direct testimony was accurate and truthful. (Tr. 41-76).

**Benjamin Escalante**

As of September 14, 2004, Escalante was employed as a Sergeant with the Michigan State Police, specializing in "forensic interviewing." (Trial Transcript, March 14, 2005, 85-86). On that date, Escalante interviewed Petitioner regarding Phillips' allegations. (Tr. 88-90). Petitioner arrived for the interview in the company of his wife and attorney. (Tr. 90-91).

Petitioner was interviewed in "an office, with a desk and chair." (Tr. 91). Escalante was not in uniform and was not wearing a weapon. (Tr. 91-98). Before the interview began, Sergeant Escalante informed Petitioner "that anytime he's free to leave, no questions asked." (Tr. 98). Escalante then informed Petitioner of his Miranda rights. (Tr. 99-108). Petitioner acknowledged that he understood his rights and was willing to speak with Escalante. (Tr. 105-08). Petitioner initially denied Phillips' allegations, but Petitioner later "began crying" and confessed that he had sex with Phillips on one occasion when he was intoxicated. (Tr. 111-14). Petitioner asserted that Phillips "forced" him to have sex with her. (Tr. 114). Sergeant Escalante then transcribed his interview with Petitioner, which Petitioner then reviewed and acknowledged. (Tr. 114-23).

**Karen Lindstrom**

As of September 14, 2004, Lindstrom was employed as a Trooper with the Michigan State Police. (Trial Transcript, March 15, 2005, 70-76). On that date, Trooper Lindstrom observed, via closed circuit television, Sergeant Escalante's interview of Petitioner. (Tr. 76-77). Escalante later entered the room where Trooper Lindstrom was located and told her that Petitioner had confessed to having sex with Phillips and that she "should go talk to him." (Tr. 77). Lindstrom and Escalante immediately returned to the room where Petitioner was sitting. (Tr. 77-79).

Trooper Lindstrom asked Petitioner, "did you tell Sergeant Escalante that you had sex with Neva?", to which Petitioner responded, "yes." (Tr. 77-78). Lindstrom asked Petitioner where this encounter occurred, to which Petitioner responded, "at my house." (Tr. 78). When asked "where in the house it happened," Petitioner stated, "on the couch." (Tr. 78). Lindstrom testified that Petitioner then stated that "she forced him to have sex with him because he was drunk." (Tr. 78).

**Casey Trucks**

As of December 11, 2003, Trucks was employed as a Trooper with the Michigan State Police. (Trial Transcript, March 15, 2005, 112-16). On that date, he was dispatched to a hospital to speak with Neva Phillips and her father. (Tr. 116-17). Because he was "not trained in forensic interviewing," Trucks "just got a brief statement" from Phillips. (Tr. 118). Trucks acknowledged that his interview of Phillips was neither "complete" nor "in depth." (Tr. 127). According to Trucks, Phillips told him that she was sexually assaulted by Petitioner on an afternoon in "the beginning of November." (Tr. 119-24, 131-32).

**Shawn Baker**

As of January 30, 2004, Baker was employed as a Detective Trooper with the Michigan State Police. (Trial Transcript, March 15, 2005, 133-37). On that date, she interviewed Neva Phillips. (Tr. 137). Phillips told Baker that she had been sexually assaulted by Petitioner "sometime in the summer." (Tr. 139-40). Phillips told Baker that the assault occurred "at night" on the couch in the living room. (Tr. 142-43). Phillips told Baker that "she had fallen asleep on the

4

couch, and [Petitioner] had come home, and it occurred on the couch." (Tr. 151). Phillips reported that Petitioner was drunk at the time. (Tr. 151). Phillips reported that Petitioner began to rub her chest and then pulled her pants down and put his finger inside her vagina. (Tr. 151-52). Phillips reported that Petitioner then inserted his penis into her vagina. (Tr. 152).

When asked about the inconsistent statements she allegedly make to Trooper Trucks concerning her allegations, Phillips stated, "I never told anybody it happened in November." (Tr. 143). Phillips further stated, "I never told anybody it happened in the afternoon, I always maintained it was at night." (Tr. 143). Detective Baker reported that Phillips was "adamant" that she did not make the statements attributed to her by Trooper Trucks. (Tr. 152-53). Detective Baker testified that she was an experienced interviewer, having conducted "over 300" forensic interviews "primarily" of children. (Tr. 147, 153).

**Raymond Munafo**

Munafo is Neva Phillips' biological father. (Trial Transcript, March 16, 2005, 8-9). On December 11, 2003, Phillips told her father that she had been raped. (Tr. 9-12). Phillips was "crying, upset, scared, [and] emotional." (Tr. 9-10). Munafo took his daughter to the hospital. (Tr. 9). After reporting the matter to her father, Phillips "started messing up in school" and so began participating in counseling. (Tr. 21-23).

Following the presentation of evidence, the jury found Petitioner guilty of one count of third degree criminal sexual conduct and one count of fourth degree criminal sexual conduct. (Trial Transcript, March 16, 2005, 86-87). Petitioner received concurrent sentences of 9-22 years and 2-3 years. (Sentencing Transcript, May 9, 2005, 5-6). Petitioner later submitted in the

5

Michigan Court of Appeals a delayed application for leave to appeal in which he asserted the following claims:

> I. Defendant was denied due process and a fair trial where the prosecutor and prosecutorial witness referred to a polygraph examination taken by Defendant.
>
> II. Where the complainant's versions of the offense were inconsistent and unbelievable, the evidence failed to establish Defendant's guilt beyond a reasonable doubt. Consequently, his convictions violate the state and federal constitutions and must be vacated.

The Michigan Court of Appeals denied Petitioner's delayed appeal "for lack of merit in the grounds presented." *People v. Andres,* No. 267891, Order (Mich. Ct. App., Apr. 6, 2006). Asserting the same two claims, Petitioner appealed this determination in the Michigan Supreme Court. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Andres,* No. 131201, Order (Mich., Sept. 26, 2006). On November 30, 2006, Petitioner initiated the present action, asserting the two claims identified above.

**STANDARD OF REVIEW**

Andres' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply

7

because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir.

8

2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

**ANALYSIS**

**I.      Evidentiary Claim**

Petitioner asserts that his rights to a fair trial and to remain silent were violated by two exchanges that informed the jury that he had participated in a polygraph examination, in violation of his right to a fair trial and his "Fifth Amendment right to remain silent."

The first incident occurred when Sergeant Escalante testified. On direct examination, the following exchange occurred between Escalante and the prosecutor concerning Escalante's interview of Petitioner:

> Q:      So [Petitioner] appeared - this case, specifically in this case, he appeared on his own?
>
> A:      Yes.
>
> Q:      Do you recall [if he] was with anybody when he

9

>           showed up?
>
> A:       I do recall [when] he had shown up for the test, his attorney was present, and I don't recall - he may have had his wife at the time present, yes, I think - yes.

(Trial Transcript, March 14, 2005, 90-91).

A few moments later, the following exchange occurred between Escalante and the prosecutor:

> Q:       Does anybody go in the interview with you?
>
> A:       No, it's just myself and the examinee.

(Tr. 92).

Petitioner moved for a mistrial following this exchange. The trial court denied Petitioner's motion, on the ground that "there has been no taint whatsoever to this jury." (Trial Transcript, March 14, 2005, 93-94). Petitioner now asserts that Escalante's testimony violates the provision under Michigan law that prevents the state from introducing evidence concerning a polygraph examination against a criminal defendant.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law."

10

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not, however, "require a perfect trial," *Clemmons*, 34 F.3d at 358, and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citations omitted).

Whether evidence that Petitioner participated in a polygraph examination was admissible in this matter is a matter of Michigan - not federal - law. Furthermore, as the trial court correctly concluded, Sergeant Escalante's comments were not so egregious that they deprived Petitioner of a fair trial. Escalante did not use the word polygraph or lie detector, but instead made an isolated reference to a "test" and to an "examinee." As the trial judge observed, the jurors did not appear to have even noticed that the comments in question referred to the fact that Petitioner participated in a polygraph examination. (Trial Transcript, March 14, 2005, 94).

The second incident occurred when Trooper Lindstrom testified. On direct examination, the following exchange occurred between the prosecutor and Lindstrom:

> Q: Going back to the poly - excuse me, the interview, in terms of when you're watching him during that point in time, is there any change in his demeanor?
>
> A: He cried for a while.

11

(Trial Transcript, March 15, 2005, 80).

Petitioner moved for a mistrial following this incident. The trial court denied Petitioner's motion, noting that the jurors did not appear to have discerned that the prosecutor's misstatement indicated that Petitioner participated in a polygraph examination. (Trial Transcript, March 15, 2005, 82-85).

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Thus, even if the challenged comments were improper, habeas relief is available only where the comments "were so flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897.

When assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court must consider the following factors: (1) the likelihood that the comments mislead the jury or prejudiced the accused; (2) whether the comments were extensive or isolated; (3) whether the remarks were deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused was substantial. *Id.*

A review of these factors persuades the Court that Petitioner's right to a fair trial was not violated. The comment in question was isolated and there is no evidence that it was anything but accidental. The trial court found that the comment neither mislead the jury nor prejudiced Petitioner. Furthermore, the evidence against Petitioner was substantial.

Petitioner further asserts that the comments identified above violated his "Fifth Amendment right to remain silent." The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In an attempt to secure this right, the United States Supreme Court ultimately held that prior to custodial interrogation, an accused must be informed of the following: (1) his Fifth Amendment right to remain silent, (2) his right to have an attorney present during questioning, (3) that anything he says may be used against him, and (4) that if he cannot afford an attorney one will be appointed for him. *See United States v. Hockett*, 2002 WL 987340 at *2 (6th Cir., May 13, 2002) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

Implicit in such rights is that "silence will carry no penalty." *Wainwright v. Greenfield*, 474 U.S. 284, 290 (1986). Accordingly, the prosecution may not rely upon a criminal defendant's post-*Miranda* warnings silence as substantive evidence of guilt. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). Moreover, the prosecution is generally prohibited from using a criminal defendant's post-*Miranda* warnings silence to impeach his subsequent trial testimony. *See Billingslea v. Jackson*, 2003 WL 22905326 at *5-6 (6th Cir., Nov. 21, 2003) (quoting *Doyle v. Ohio*, 426 U.S. 610, 618 (1976)).

Petitioner's claim fails because the comments in question, concerning an interview in which Petitioner voluntarily participated after waiving his Miranda rights, simply do not implicate Petitioner's Fifth Amendment right to remain silent.

The Michigan Court of Appeals denied this claim for "lack of merit." For the reasons discussed herein, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it was not based on an

13

unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.      Sufficiency of the Evidence**

As previously noted, Petitioner was convicted of one count of third degree criminal sexual conduct and one count of fourth degree criminal sexual conduct. Petitioner asserts that he is entitled to habeas relief because his convictions are not supported by sufficient evidence.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Under Michigan law in effect at the time of the events in question, a person was guilty of third degree criminal sexual conduct if he engaged in sexual penetration with someone

14

between the ages of 13 and 16. Mich. Comp. Laws § 750.520d. A person was guilty of fourth degree criminal sexual conduct if he engaged in sexual contact with someone between the ages of 13 and 16. Mich. Comp. Laws § 750.520e.

Neva Phillips testified that she was fifteen years of age when Petitioner assaulted her. Phillips testified that Petitioner rubbed her breasts and penetrated her vagina with his finger and, later, his penis. Detective Baker testified that Phillips made identical allegations to her when she interviewed Phillips. Sergeant Escalante and Trooper Lindstrom both testified that Petitioner confessed to having sex with Phillips. Given the overwhelming evidence of Petitioner's guilt, a rational juror could certainly have found Petitioner guilty of the crimes charged.

Petitioner asserts that he is entitled to relief because Phillips' "versions of the offense were inconsistent and unbelievable." Petitioner's claim is based on the testimony by Trooper Trucks that Phillips' statements to him were inconsistent with her trial testimony and the statements she made to Detective Baker. Phillips consistently disputed, both at trial and during her interview with Detective Baker, that she made the statements attributed to her by Trooper Trucks. The jury apparently chose to believe Phillips and Detective Baker regarding this matter. As noted above, this Court may not reassess this evidence or substitute its judgment for that of the jury.

The Michigan Court of Appeals denied this claim for "lack of merit." For the reasons discussed herein, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

15

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Andres' petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: January 11, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge